IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.                                                  3:08cr46/LAC
                                                    3:09cv359/LAC/MD

WILLIAM JOHN DANIEL MAGSAMEN, III

---

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 (doc. 291). The government filed a response in which it requested that the court hold an evidentiary hearing, explaining that it could not refute the defendant's ineffective assistance of counsel claims with the affidavit received from the former defense attorney. (Doc. 295). The undersigned held a hearing March 12, 2010. After the hearing, the appointment of attorney Christopher Klotz was extended to allow him to file a brief on the issue. He filed a brief and the government filed a response. (Doc. 318 & 320). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that the motion should be denied.

## I. BACKGROUND

Defendant and seven others were charged with conspiracy to possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine and 1,000 kilograms or more of a mixture and

substance containing a detectable amount of marijuana in violation of 21 U.S.C. 841(b)(1)(A)(ii) and (b)(1)(A)(vii), possession with intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine and one hundred (100) kilograms or more of a mixture and substance containing a detectable amount of marijuana in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii) and (b)(1)(B)(vii) and 18 U.S.C. § 2 on a date certain. (Doc. 11). The indictment also included a forfeiture provision.

Represented by appointed counsel Patrick Jackson, defendant entered a plea of guilty to counts one and two of the indictment pursuant to a written plea and cooperation agreement. (Doc. 134). The plea colloquy was for the most part unremarkable, although the defendant denied having been involved in the direct transport of cocaine, he admitted knowledge of it, and admitted his involvement in the transport of marijuana. (Doc. 308 at 10). When queried about his understanding about the fact that no one could tell him what his actual sentence would be, defendant stated that everyone had "made that very clear." (Doc. 308 at 13). The court explained that even if the sentence was greater or more than he was hoping for or expecting, he would still be bound by the plea. Defendant indicated he understood but asked whether he would be able to appeal it. The court responded that he would be able to if it was an illegal sentence, but not just because it was more than he was hoping for, and defendant affirmed his understanding. (Doc. 308 at 14-15).

The PSR held defendant accountable for 4,536 kilograms of marijuana, yielding a base offense level of 34. After a two level adjustment for possession of a dangerous weapon by other conspirators, his total offense level was 36. His criminal history category was III. The initial calculation had included an adjustment for acceptance of responsibility, to which the government objected. The defendant objected to the firearm adjustment and to the quantity of drugs attributed to him.

At sentencing,[1] defendant withdrew his objections to the PSR. (Doc. 262 at 2). The government then followed suit and withdrew its objections. It also noted on the record that the defendant was the least culpable of the individuals indicted thus far in the case and might be subject to a role reduction, particularly since his involvement was strictly with marijuana. (Doc. 262 at 2-4). The court determined that defendant's total offense level was 31 and the applicable recommended guideline range was 135 to 168 months. The court sentenced defendant to the statutory mandatory minimum of 120 months on each count to run concurrently, which was below the applicable recommended guidelines range. Defendant did not appeal.

In the present motion, defendant contends that counsel was constitutionally ineffective for reasons including his failure to file an appeal and failure to make various objections at sentencing, that his criminal history calculation over-represents the seriousness of his criminal history, and that the court should have applied the safety valve. In responding to the defendant's motion, the government requested that the court hold an evidentiary hearing because it was unable to refute defendant's claims without the full cooperation of former defense counsel. The hearing was held on March 12, 2010.

## II. THE EVIDENTIARY HEARING

Defendant William Magsamen III was the first witness to testify at the hearing. He said that he called his former lawyer after his September 23, 2008 sentencing via a "three-way" call and asked him to appeal. He stated that he did this "within days," and indicated that he told counsel this both on the phone and in a letter. With respect to that phone conversation, defendant said that he assumed that they were appealing, that they talked about it for a few minutes, and that he understood that

---

[1]The record reflects that counsel was late for court because he was in court before another judge. (Doc. 262 at 2). The court in no way faults counsel for this, but merely notes that the tardiness rendered any pre-sentencing consultation with his client impossible.

the judge "told him to appeal." During the conversation, he recalled that counsel tried to talk him out of appealing, and that counsel said if he still wanted to appeal to put it in writing. Defendant again said he had already done that within days of being sentenced. He indicated that he probably sent the letter the same date as the phone conversation from Escambia County Jail, and that it was a single page letter. He reiterated that he was still assuming that the judge was expecting him to appeal. He stated that at the time he had Mr. Jackson's address from previous correspondence Mr. Jackson had sent to him, but stated that he did not retain a copy of the letter he sent to counsel. Defendant testified that Mr. Jackson never advised him in writing that he would not appeal, and he said he did not hear from Mr. Jackson after the phone conversation mentioned above, although he conceded that counsel might have come to the jail to visit one additional time.

On cross examination, defendant repeated his assertion that counsel had told him if he wanted to appeal he needed to notify counsel in writing. Defendant said he thought that the appeal was guaranteed after sentencing, but he did phone counsel later to request the appeal. The government pointed out that the defendant stated in his motion that he spoke with counsel after sentencing, and in response defendant reiterated what he had explained on direct examination about the three-way phone call, which lasted only about ten minutes. When asked about possible issues for his appeal, defendant said he told counsel he wanted to appeal the drug weight because he did not know anything about criminal history at that time.

The defendant then called Heather Halsey as a witness. Ms. Halsey apparently had not been subpoenaed for the hearing by either party, but had come of her own accord and entered the courtroom at the conclusion of defendant's testimony. She testified that she had been a friend of the defendant's for about ten years and that they had maintained telephone contact during and after his criminal proceedings. She stated that she was the person who facilitated defendant making a three-way call to his attorney within a week of the sentencing. She did not recall the exact

details of the conversation, but said that the defendant was not happy with what Mr. Jackson said because Jackson said that an appeal was pointless. She unequivocally stated that defendant had asked Jackson to file an appeal during the telephone conversation.

On cross-examination, Ms. Halsey stated that she had a relationship with one of the co-defendants and that she had been present during sentencing for both defendants. She said she spoke to defendant within a day after his sentencing and at that time defendant asked her to help him make the three way call to his attorney. Ms. Halsey testified that she and the defendant talked a few times before they got through to Mr. Jackson. She was asked whether there was any question in her mind that the defendant wanted Jackson to appeal, and she said that no there was not, that requesting the appeal was the reason for the call. She stated that she did not recall Jackson making a request of defendant at that time.[2]

The government called attorney Pat Jackson as a witness. Mr. Jackson testified that he has been practicing law for 21 years, and criminal law comprises approximately 75% of his practice. He indicated that he has had clients request that he file an appeal after trial or sentence, and he noted that in this case, he was appointed to represent the defendant so there was no fee agreement that would have limited his representation to trial only. Mr. Jackson stated unequivocally that the scope of his representation of the defendant was "to file an appeal if he so directs me." Jackson noted that it is possible for the office of the Public Defender to assign other counsel after a case has concluded, but that he usually handles his own appeals. He also stated that he has had occasion to file an *Anders* brief on appeal.

The government introduced counsel's affidavit as exhibit 1, and the defendant's plea and cooperation agreement as exhibit 2. Mr. Jackson stated that

---

[2]This was clearly a reference to defendant's testimony that counsel requested that he put his request in writing.

he recalled that the defendant had entered a plea, and he had reviewed the transcript of both the plea colloquy and the sentencing proceeding. He testified that after sentencing he told his client that there was no basis for an appeal because he had entered a plea and the sentence was not illegal, and "good luck." Jackson stated that he does not recall receiving a phone call from Mr. Magsamen or any further contact with him. His recollection was also that after he advised his client about the merits of appeal, the defendant accepted his explanation and did not insist upon an appeal. He stated that the conversation in question occurred right in the courtroom, and only took place for a minute or two after sentencing, and there is no notation about the conversation in his file. Similarly, the file contains no correspondence memorializing for defendant's benefit that counsel would not appeal. Finally, counsel denied having received anything in writing from the defendant indicating that he wanted to pursue an appeal, and noted that there was nothing further in his file.

Counsel testified that because defendant was attempting to cooperate with the government, he and his client discussed the relative advantages of cooperation in lieu of an appeal. They also discussed whether defendant should go to trial because the government had not found enough marijuana to subject him to a minimum mandatory sentence versus attempting to get the benefit of a 5K motion.

When asked if the defendant had requested that he file an appeal, what issues of merit he might have identified, counsel indicated that he did not explore what he might have raised on appeal because the sentence appeared legal. He stated that he saw no "appealable events" and had defendant requested that he file an appeal he would have filed an *Anders* brief. Because the plea and cooperation agreement stipulated to certain facts and other matters, in his opinion the only avenue available to defendant was a 2255. Counsel testified that he has no recollection or file notation of defendant's attempts to call or communicate with him. With respect to his desire for an appeal, Mr. Jackson stated that all the defendant would have

needed to do was to tell him to appeal or send him a letter. Although the court recommended that such a request be done in writing, counsel said even an oral request would have sufficed whether at sentencing, by phone, or through a friend, and that in the latter circumstance counsel would have immediately contacted the defendant to verify his intent.

Mr. Klotz directed counsel's attention to his email correspondence with AUSA Knight (introduced as defendant's exhibit 1), where counsel stated that he had received nothing in writing, suggesting that defendant's request needed to be done in writing. While counsel agreed that this appeared to be the case, he said that if the October 6 emails are read along with his October 1 affidavit, it is clear from the totality of the evidence that defendant had not requested an appeal either way.

Counsel's recollection of his interaction with the defendant appeared somewhat sketchy. He said he could not remember any telephone conversations with the defendant after sentencing, but when pressed, he said it was possible that there had been a call, but he did not recall. He said if the defendant had called him prior to sentencing he would have gone to the jail, but he "did not remember one way or another" about calls either before or after sentencing. He noted that his file contained no notes about a telephone conversation with the defendant. Counsel acknowledged that he does get calls from clients, but again stated that he did not recall specifically this defendant. He then said that he could say he did not talk to the defendant after sentencing, and that sentencing was the last time he had oral communication with him. Mr. Jackson stated that he did not write a letter to the defendant telling him that he would not appeal, and further said that he had never had a client sign a document or put in writing their intent to waive their right to appeal.

Counsel reiterated that immediately after sentencing he told defendant that the sentence was legal, he did not see any appealable events, and good luck. Counsel

explained that he initiated the conversation based on the court's statement that defendant needed to consult with counsel about the appeal.

Mr. Jackson's recollection was that the defendant did not specifically respond or react to outcome of the proceedings, but that he was upset during the whole sentencing. In response to Mr. Klotz's questions, Mr. Jackson testified that he did not tell defendant that he could file an appeal regardless of opinion of his attorney, he did not explain to him what an *Anders* brief was and he did not tell defendant that defendant was the one who was to make the final decision about filing an appeal, not counsel. He also did not recall any three-way calls during the course of his representation of the defendant.

Counsel was questioned about his determination that there were no appealable issues, and the fact that in his affidavit he conceded that defendant's representation by counsel in two "scored" convictions in the PSR was not established, a fact that could have affected defendant's criminal history. Counsel stated that he relied on the PSR and his conversation with the defendant concerning that. He admitted that if the criminal history was not valid it could have made a tremendous difference in the sentencing, and that may have been a ground for appeal.

On redirect, Mr. Jackson explained that he interrupted his client being led out of the court room to talk with him about the appeal. He observed that his file contained notes about his discussions with the defendant about the plea and cooperation agreement and strategies employed, but there was no documentation about defendant's waiver of the constitutional right to appeal.[3]

---

[3]Although the following approach is certainly not required by any Federal or Local Rule, it certainly would make for simple disposition of claims such as that brought in the instant motion. In reviewing the criminal file in this case, the court noted that counsel for co-defendant Tanya Dawn Greer filed a notice to the court regarding her appellate rights in which counsel explained that defendant had told counsel she did not wish to file an appeal, that counsel agreed with this decision, and that defendant signed a document in her own handwriting explicitly waiving her right to appeal. (Doc. 285). Counsel waited until the natural expiration of Ms. Greer's appellate rights to file the document.

At the close of the hearing, Mr. Klotz was afforded seven days to file a brief in the defendant's behalf and the government was afforded an additional seven days to reply. Both parties timely submitted their supplemental arguments and evidence.

## III. SUPPLEMENTAL EVIDENCE

After the hearing the U.S. Attorney's Office obtained a copy of a recorded telephone conversation that defendant made from the Santa Rosa County Detention Center to Heather Halsey who "conferenced in" Mr. Jackson and provided a copy to defendant's current counsel. (Doc. 319 & 321). The court has listened to the audio-recording, which confirms the testimony of Magsamen and Halsey that a three-way call occurred to Mr. Jackson.

The relevant contents of the recording are summarized herein. Defendant called Halsey collect from the Escambia County Detention center, and she unsuccessfully attempted to conference in another individual then called Mr. Jackson at defendant's request. While they were waiting for the receptionist to transfer defendant to Mr. Jackson's assistant, Halsey asked defendant whether he was going to ask counsel about the appeal and he said that he was. After speaking briefly to Mr. Jackson's assistant, defendant spoke to Mr. Jackson.

Defendant told counsel that he had some questions that he had not been able to ask since he had been ushered out of court so quickly after sentencing. He asked about the judge's reference to the appeal and expressed his belief that the judge instructed him to appeal. Counsel explained that the judge was not telling the defendant to appeal, but rather was advising him of his appellate rights, as he does with every defendant. Counsel told defendant that he did not see an "appealable event" arising from the proceedings, noting the plea and cooperation agreement and the fact that the court departed below the guidelines without objection from the prosecutor. Counsel also noted that the court had wanted to ensure that defendant's sentence was in accordance with how others involved in the case had

been sentenced. Mr. Jackson opined that this laid the groundwork for the defendant to get an equal or lesser sentence to others involved in the conspiracy if defendant came back with a substantial assistance motion.

Defendant pointed out to counsel that he was the least involved member of the conspiracy, although another individual was only sentenced to a term of 24 months. Defendant again said that he thought the judge had said that an appeal was appropriate, and counsel clarified that the court had said that a *reduction* was appropriate, and he gave the reduction, but the court had not said that an appeal was appropriate. Defendant asked counsel whether Mr. Knight had said he should have been held accountable for all that marijuana. Mr. Jackson said he was not held accountable for that amount, because he was sentenced below the guidelines range. Thus his sentence corresponded not to the quantity of marijuana attributable to that guideline range, but to the statutory mandatory minimum sentence.

Counsel told defendant that if he wanted to appeal, he needed to immediately send counsel a letter and counsel would file the appeal. Counsel repeated his belief that there was no legal basis for an appeal. Defendant in turn repeated that he was the least involved so he thought he should be able to appeal his sentence on that basis. Counsel said that all of the things defendant mentioned about his sentence could be taken into account by the court if defendant was brought back before it on a substantial assistance motion and the court would no longer be bound by the statutory mandatory minimum. Counsel again repeated that there was no appealable event. Defendant asked about the weight, and counsel said no. Defendant asked if he put in an appeal what would it be for, counsel said "it would be for nothing," that he or another attorney would look at the facts and file an *Anders* brief in defendant's behalf. Mr. Jackson explained what an *Anders* brief was, and told defendant that if such a brief was filed the appellate court would ask him to explain what he thought should be appealed. Defendant again insisted the drug weight should be appealed and counsel again said there was no legal basis for that.

Counsel reiterated that if defendant wanted an appeal, defendant needed to send him a letter and he would file the appeal. Counsel warned defendant that if he appealed, he needed to be aware that he might not get substantial assistance. Ms. Halsey interjected that she would not recommend that because that was what "messed Dave up, . . . they would not come and talk to him because he had an appeal going on." Counsel opined that filing an appeal would be "cutting defendant's throat" and repeated that if defendant wanted him to appeal to send him a letter. Defendant said he had already "sent a letter but did not exactly say..." and then interrupted himself to ask that he be allowed to think about it for a day or two. Counsel reminded him of the ten day deadline and again offered the opinion that filing an appeal would be cutting defendant's throat. Defendant asked what would happen if he did not get his substantial assistance and counsel said that he would do his ten years, that this is how it was in federal court. The defendant replied that this did not make sense to him. Counsel responded by asking if there was anything else, and when defendant said he guessed that there was not, the conversation ended. Defendant and Ms. Halsey are then heard discussing how substantial assistance might work in defendant's favor. Defendant said he would call her back later because he might need to call Mr. Knight (sic) back the following day, and the call was terminated.

## IV. LEGAL ANALYSIS

### A. General Applicable Legal Standards

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *Thomas v. Crosby,* 371 F.3d 782, 811 (11th Cir.

2004); *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *United States v. Nyhuis,* 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994), *cert. denied*, 514 U.S. 1112, 115 S.Ct. 1966, 131 L.Ed.2d 856 (1995); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981); *Hidalgo v. United States*, 138 Fed.Appx. 290 (11th Cir. 2005). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn v. United States,* 365 F.3d 1225, 1234-35 (11th Cir. 2004); *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998);

*Mills v. United States*, 36 F.3d 1052, 1055 (11ᵗʰ Cir. 1994) (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn,* 365 F.3d at 1234; *Bousley,* 118 S.Ct. at 1611 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11ᵗʰ Cir. 2000).

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Patterson,* 595 F.3d 1324 (11ᵗʰ Cir. 2010); *United States v. Bender*, 290 F.3d 1279, 1284 (11ᵗʰ Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11ᵗʰ Cir. 1993). The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Id.,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495,

1511, 146 L.Ed.2d 389 (2000); *Gaskin v. Secretary, Dept. of Corrections,* 494 F.3d 997, 1002 (11th Cir. 2007). **"*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea."** *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)); *United States v. Pease,* 240 F.3d 938, 941 (11th Cir. 2001). **In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.**

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688, 104 S.Ct. at 2065; *see also Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States,* 518 F.3d 1291, 1301 (11th Cir. 2008); *United States v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003); (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)). When examining the performance of an experienced trial counsel,

the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629); *United States v. Ross*, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly

prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle,* 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

    **B. Failure to File an Appeal**

    The issue of counsel's duty and obligation with respect to his client's right to appeal has been well litigated. The *Strickland* analysis set forth above is inapplicable. The Supreme Court has unequivocally stated that if a defendant specifically instructs his attorney to file a notice of appeal, a lawyer who disregards this instruction acts in a manner that is professionally unreasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000) (citing *Rodriguez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); *Peguero v. United States*, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999)). Since a defendant whose lawyer fails to file an appeal upon request has been denied an entire judicial proceeding, prejudice is presumed and the defendant is entitled to a belated appeal. *Id.*; *Gomez-Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005). However, in cases where a defendant neither instructs counsel to file an appeal nor

asks that an appeal not be taken, the question whether counsel has performed deficiently by not filing a notice of appeal is analyzed as follows:

> [T]he question . . . is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning - advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered; Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. *See supra* 1034-1035. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Flores-Ortega,* 528 U.S. at 478, 120 S.Ct. at 1035; see also *Thompson v. United States*, 504 F.3d 1203, 1207 (11th Cir. 2007). The *Flores-Ortega* Court rejected a bright-line rule that counsel must always consult with a defendant regarding an appeal:

> We instead hold that counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known . . . . Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings.

*Id.,* 528 U.S. at 480, 120 S.Ct. at 1036; see also *Devine v. United States*, 520 F.3d 1286 (11th Cir. 2008) (finding counsel had no affirmative duty to consult with defendant about an appeal where defendant was sentenced at the bottom of the Sentencing Guidelines range after pleading guilty and waiving right to appeal); *Thompson,* 504

F.3d at 1208 (11th Cir. 2007) (defendant dissatisfied with perceived disparate sentence met burden of showing he would have wanted to appeal); *Otero v. United States*, 499 F.3d 1267 (11th Cir. 2007) (defendant who received sentence at low end of predicted guidelines range and had not expressed desire to appeal failed to show prejudice).

      In cases where a defendant has not specifically instructed his counsel to file a notice of appeal, a *per se* prejudice rule does not apply, rather, a defendant must demonstrate a reasonable probability exists that, but for counsel's deficient performance, he would have timely appealed. *Flores-Ortega,* 120 S.Ct. at 1038, 1040; *Thompson*, 504 F.3d at 1207. "Evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Flores-Ortega*, 120 S.Ct. at 1039. However, "[b]ecause a direct appeal of a federal conviction is a matter of right, see *Rodriquez v. United States*, 395 U.S. 327, 329-330, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969), we determine whether a defendant has shown that there is a reasonable probability that he would have appealed without regard to the putative merits of such an appeal." *Thompson v. United States,* 504 F.3d at 1208 (citing *Flores-Ortega*, 528 U.S. at 485-86, 120 S.Ct. 1029; *Gomez-Diaz*, 433 F.3d at 793).

      In *Thompson*, the district court had found "[c]onsulting with [Thompson] for less than five minutes about his right to appeal does not equate to a failure to consult." 504 F.3d at 1207. On appeal, the Eleventh Circuit stated that the question of what constitutes adequate consultation, however, is not one of duration, but of content. *Id.* It found that the content of the exchange in that case did not constitute adequate consultation because no information was provided to the defendant from which he could have intelligently and knowingly either asserted or waived his right to an appeal, and the record was clear that no reasonable effort was made to discover defendant's informed wishes regarding an appeal. *Id.* Under these

circumstances, the court found that any waiver by the defendant of his right to appeal was not knowing and voluntary. *Thompson*, 504 F.3d at 1207.

In *Otero v. United States*, 499 F.3d 1267, 1270-1271 (11th Cir. 2007) the court found that counsel had not consulted with his client, when all discussions regarding an appeal took place prior to sentencing. However, it found that no rational defendant in Otero's position would have sought to appeal in light of the broad appeal waiver, and because Otero did not communicate to his lawyer a desire to appeal, it concluded that counsel was not under a constitutional obligation to consult with his client about an appeal.

Although counsel here had no recollection or notation of it in his file, the court finds that the telephone conversation with the defendant clearly sufficed to constitute a "consultation" about the appeal. And, after having reviewed the audio recording of defendant's telephone call to counsel, the court cannot unequivocally say that defendant requested counsel to file an appeal. Although during the conversation defendant referred to a letter he had sent to counsel, he did not specifically say that he had requested an appeal in that letter, which counsel testified that he never received, and in fact after mentioning the letter said he needed another day or so to think about the appeal issue.

The final question, then, is whether in light of this conversation counsel fulfilled his duty to attempt to determine his client's wishes. *See Gomez-Diaz*, 433 F.3d at 793; *Roe v. Flores*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). Defendant argues that counsel made inadequate efforts to determine his desire regarding his appeal. This court disagrees. Contrary to the testimony at the hearing, the status of defendant's appeal at the end of the telephone conversation was that defendant wanted a day or two to think about it. Implicit in such a statement is that defendant would let his attorney know what he had decided.[4] He

---

[4]The court notes counsel's suggestion that defendant had to make his request for appeal in writing–a statement counsel made at least twice during the phone conversation, and something about which he was questioned at the hearing. Although it is recommended that criminal defendants make their requests for an

did not, for instance, tell counsel "file the appeal unless you hear otherwise." There is no evidence that either the defendant or his attorney attempted to contact the other whether by phone, by letter or in person, to clarify the ambiguity and verify whether defendant wished to appeal against counsel's advice.[5] Although counsel's record keeping was somewhat less than ideal, the court does not find under the particular circumstances of this case that it was counsel's burden to initiate further contact with the defendant to question him where he stood with respect to an appeal.

### B.  Criminal History Points and Safety Valve

Defendant objects that the criminal history points over-represents the seriousness of his criminal history and was incorrectly calculated, and that the safety valve should have been applicable in his case. The court construes his claim as one that counsel failed to broach this argument in his behalf, and that this failing was constitutionally ineffective.

The government first argues that even if there was error, defendant cannot show prejudice because he was sentenced in accordance with the statutory mandatory minimum rather than a guidelines calculation. His criminal history calculation thus had no bearing on his sentence, and counsel therefore could not have been constitutionally ineffective for his failure to raise this issue.

Section 5C1.2 of the Sentencing Guidelines, which implements 18 U.S.C. § 3553(f) and is commonly known as the "safety valve" provision, permits courts to disregard the applicability of statutory mandatory minimum sentences in cases in

---

appeal in writing to prevent just the scenario presented to the court in this case, it is not legally required.

[5]Although counsel stated several times that there were no appealable events and told defendant that he would file an *Anders* brief if requested to appeal, the identification of a meritorious appellate issues is not pre-requisite for the filing of an appeal. *Gomez-Diaz*, 433 F.3d at 793; *Flores-Ortega*, 528 U.S. at 486, 120 S.Ct. at 1040.

which certain criteria are met. *See United States v. Milkintas,* **470 F.3d 1339, 1344 (11th Cir. 2006); *United States v. Simpson*, 228 F.2d 1294, 1304 (11th Cir. 2000) (applying 18 U.S.C. § 3553(f)); *United States v. Brownlee,* 204 F.3d 1302 (11th Cir. 2000); *United States v. Bravo,* 203 F.3d 778, 781 (11th Cir. 2000). Section 2D1.1(b)(9) provides that defendants who meet the criteria of the safety valve provision shall have their offense level decreased by two levels. See *Milkintas,* 470 F.3d at 1344; *United States v. Camacho*, 261 F.3d 1071, 1073 (11th Cir. 2001); *United States v. Anderson*, 200 F.3d 1344, 1347 (11th Cir. 2000). Safety valve relief, when applicable, is mandatory. *United States v. Quirante*, 486 F.3d 1273, 1275 (11th Cir. 2007). The five criteria are:**

> **(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;**
>
> **(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;**
>
> **(3) the offense did not result in death or serious bodily injury to any person;**
>
> **(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and**
>
> **(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.**

**§ 5C1.2 U.S.S.G.**

Defendant's assertions with respect to the application of the safety valve are conclusory and do not entitle him to relief. He contends that he was not represented by counsel when convicted of two misdemeanor offenses identified in paragraphs 111 and 112 of the PSR. Paragraph 111 is a Florida conviction, while paragraph 112 occurred in the state of Maryland. State procedural rules in each of those states at the time of defendant's convictions required that a defendant charged with a criminal law violation be advised of his right to counsel and either be represented by an attorney or knowingly waive representation. Maryland Rule 4-213, former MD-Rule 719; Fla.R.Crim.P. Rule 3.111. Defendant's bare assertion that he was not represented by counsel, particularly in light of state procedural law providing for either representation or a valid waiver is insufficient.

Defendant also contests the scoring of a conviction for criminal domestic violence that occurred in South Carolina for which he received one criminal history point. (PSR ¶ 116). He also received two additional points pursuant to § 4A1.1(d) because he had not completed 26 weeks of domestic abuse counseling and was thus still serving the supervisory component of a previous sentence. His unsupported assertion that the conviction was uncounseled does not entitle him to relief. The South Carolina code has a specific section that provides for appointment of counsel to those financially unable to retain counsel absent a voluntary and intelligent waiver. Furthermore, defendant's contention that the two additional points were not properly scored is mistaken. Section 4A1.1(d) provides that two criminal history points are added if the defendant committed any part of the instant offense while under any criminal justice sentence. Application note 4 to § 4D1.1 U.S.S.G. explains that this means a sentence with either a custodial or supervisory component, including a term of unsupervised probation; active supervision is not required. More than one criminal history point renders a defendant ineligible for the safety valve. The defendant in this case has not shown the invalidity of any of the five criminal history points, much less four of the five. His conclusory assertions

do not establish his entitlement to the safety valve or that counsel's failure to challenge the criminal history points resulted in prejudice. Counsel is not ineffective for failing to preserve or argue a meritless claim. *Freeman v. Attorney General, Florida,* 536 F.3d 1225, 1233 (11th Cir. 2008); see also *Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore,* 240 F.3d 907 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful).

### C. Failure to Object to Drug Quantity

Defendant also asserts that counsel was ineffective because he did not argue that a lesser drug quantity should have been attributable to him in the PSR. Again, he has failed to show deficient performance and prejudice. Defendant was actually held accountable for the 10,000 pounds of marijuana distributed by the co-conspirators, an amount well in excess of what he personally distributed. The law of conspiracy and the fact that he would be held accountable for the actions of his co-conspirators was explained to him at his rearraignment. (Doc. 308 at 10-11). Defendant was sentenced to the statutory minimum mandatory sentence that is applicable when a defendant is held accountable for at least 1000 kilograms of

marijuana. 21 U.S.C. § 841(a). Once the determination was made that defendant should be held accountable for 1000 kilograms, anything in excess of that figure would not have made a difference in his sentence. Conversely, defendant does not suggest that he should have been held accountable for an amount less than this, and this court's review of the PSR does not suggest that counsel could have made a valid objection that would have altered defendant's sentence. Counsel of course is not ineffective for failing to make a non-meritorious argument. See *Freeman v. Attorney General, Florida,* 536 F.3d 1225, 1233 (11th Cir. 2008); *Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002); *Chandler v. Moore,* 240 F.3d 907 (11th Cir. 2001); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000).

Within his argument about the drug quantity, defendant alleges that a sentencing disparity existed. He appears to assert that although he was identified as among the least culpable of the defendants, he was sentenced for the same marijuana weight as the "undisputed kingpin" in the case. Regardless of how much marijuana was initially attributed to him vis-a-vis the other defendants, defendant's assertion about the sentencing disparity is misguided. Every co-conspirator who received neither a substantial assistance motion nor the benefit of the safety valve provision received a greater sentence: David Schimmel, life imprisonment; Anthony Bridgewater, life imprisonment, Russell James Anthony, 135 months; Suzanne Marie Kaiser, 168 months; Scott Kerle, 135 months. He has not shown a valid legal basis for a meritorious objection and is not entitled to relief on this basis.

### D. Advice Regarding Plea Agreement and PSR Objections

In his first ground for relief, defendant claims that counsel "gave faulty advice in regard to the plea agreement," but he does not explain what allegedly faulty advice he received or how this prejudiced him. If, as the government suggests, he refers to the drug type referenced in the agreement, the court notes that although the indictment charged and the plea agreement reflected that the conspiracy involved

marijuana and cocaine, defendant was held accountable at sentencing for only marijuana.  Thus, there was no prejudice that inured from the reference to cocaine in the plea agreement.

Defendant also complains that counsel "withdrew objections at the sentencing hearing or failed to make objections to the PSR."  Defendant objected to the application of the adjustment pursuant to § 2D1.1 of the U.S.S.G. for possession of a firearm by a co-conspirator. This objection was legally and factually without merit in this case; based on the quantity of drugs being transported and distributed during this conspiracy, it was reasonably foreseeable to the defendant that one of the co conspirators might possess a firearm in furtherance to the conspiracy, even if he personally did not possess a weapon.  See *United States v. Otero*, 890 F.2d 366 (11th Cir. 1989); *United States v. Pinkerton*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).  Thus, counsel's withdrawal of a non-meritorious objection was not ineffective.  Likewise, counsel was not ineffective for withdrawing his argument that defendant withdrew from the conspiracy, as the facts of this case did not support such a defense.  *United States v. Aviles*, 518 F.3d 1228, 1231 n.3 (11th Cir. 2008).  A conspirator demonstrates withdrawal by "proving that he (1) undertook affirmative steps, inconsistent with the objects of the conspiracy, to disavow or to defeat the conspiratorial objectives, and (2) either communicated those acts in a manner reasonably calculated to reach his co-conspirators or disclosed the illegal scheme to law enforcement authorities." *Aviles,* 518 F.3d at 1231 n. 3 (quoting *United States v. Pippin*, 903 F.2d 1478, 1481 (11th Cir. 1990)(quotation and citation omitted)). "Merely ending one's activity in a conspiracy may not constitute withdrawal." *Id*. Defendant has not suggested what meritorious objections counsel should have made, and thus has failed to establish a *Strickland* violation.

## V.  CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds that it could be debatable among jurists of reason whether counsel fulfilled his duty to attempt to determine his client's wishes with respect to an appeal.  See § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court grant a certificate of appealability as to this issue only in its final order.

The second sentence of  new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 291)  be DENIED.

A certificate of appealability issue as to the question of whether counsel complied with his constitutional obligations with respect to his client's appeal.

At Pensacola, Florida, this 15th day of April, 2010.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).